UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY OH and
DEAN DaSUTA,

        Plaintiffs,

v.                                                                                  Case No.    06-CV-10187

IMAGEMARK, INC.,
BERNARD MARDEN,
JAMES MARDEN, BRUCE ROSS,
FRANK BISCONTI, and THOM DEAN,

        Defendants.

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

This case arises out of a brief employment relationship between Imagemark, Inc. and Jeffrey Oh and Dean DaSuta. After several months in their new positions, Imagemark, as was its right, terminated Oh and DaSuta's employment. Oh and DaSuta have now sued Imagemark, Bernard Marden, James Marden, Bruce Ross, Frank Bisconti, and Thom Dean (collectively the "Imagemark Defendants") asserting vague allegations of fraud and promissory estoppel in an attempt to fashion a claim for wrongful termination where one cannot otherwise exist. The allegations of the complaint are insufficient to sustain a fraud claim and do not meet the requirements imposed by Rule 9(b) of the Federal Rules of Civil Procedure. Additionally, both the allegations of fraud and promissory estoppel are insufficient to state a claim, and should be dismissed under Fed. R. Civ. P. 12(b)(6). In the alternative, the Imagemark Defendants request that the plaintiffs be required to make a more

definite statement and re-plead with particularity. Fed. R. Civ. P. 12(e). [1]

## FACTUAL BACKGROUND

The grounds for dismissal presented in this brief are legal questions based on the pleadings. Assuming the well pled Complaint facts as true, they fail to state a legally cognizable claim based on plaintiffs' termination of their employment, or based on some kind of fraud.[2]

On July 14, 2005, plaintiff, Jeffrey Oh, applied for the position of Senior Vice President of Sales for Imagemark. (Compl. ¶ 13). On July 18, 2005, Bernard Marden contacted Oh to schedule an interview. (Compl. ¶ 14). The following day, Mr. Marden interviewed Oh for the position during dinner at the 21 Club in New York City. (Compl. ¶ 15).

During that meeting, Mr. Marden allegedly told Oh that "Imagemark was worth $25 million, was projected to reach $50 million in annual sales by the end of 2007 with

---

[1] Additionally, the Imagemark defendants note that Fed. R. Civ. P. 8(a) requires a complaint to contain a "short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it." Where jurisdiction is based on diversity "the amount in controversy and citizenship of the parties must be alleged specifically." Moore's Federal Practice § 8.03[5][a]. While the Complaint alleges Oh's and DaSuta's states of residence (Connecticut and Massachusetts, respectively). It does not state Imagemark's state of incorporation, but only the location of its New York Office, and that its principal place of business is in Milwaukee, Wisconsin. The Complaint makes no allegations regarding the citizenship of any of the individual defendants, so it is impossible to determine whether diversity jurisdiction truly exists.

Moreover, the allegations as to Oh and DaSuta are insufficient to the extent they merely allege "residence" as opposed to citizenship or domicile. The United States District Court for the Southern District of New York has noted that "[i]t is established beyond question that an allegation of a party's residence is not a sufficient allegation of his citizenship." *Fisher v. United Airlines, Inc.*, 218 F. Supp. 223, 224 (S.D.N.Y. 1963). Rather, an individual's citizenship is determined by his domicile. *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); 28 U.S.C. § 1332. A domicile is the place where a person has his "true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning. *Palazzo*, 232 F.3d at 42.

[2] As required on a motion to dismiss, we accept the factual allegations of the complaint as true. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). However, the Imagemark Defendants vigorously dispute the version of events offered by Oh and DaSuta.

Mr. Oh's help, and had been extremely profitable." (Compl ¶ 16). After his meeting with Bernard Marden, Jeffrey Oh told plaintiff Dean DaSuta that Imagemark was in the process of hiring candidates to fill various positions, and Mr. DaSuta also visited Imagemark's website and applied for the Regional Vice President of Sales position. (Compl. ¶ 18)

It is alleged that in "late July 2005, Mr. Oh and Mr. DaSuta met with Bruce Ross and Thom Dean in Imagemark's New York office. Mr. Ross and Mr. Dean reiterated that Imagemark was a $25 million dollar company that could become a $50 million company with Mr. Oh and Mr. DaSuta's help." (Compl. ¶ 20) Bernard Marden "verbally offered Mr. Oh the Senior Vice President position, with a base salary of $135,000, a $30,000 guaranteed annual bonus and an opportunity to own equity in Imagemark." (Compl. ¶ 21) Bernard Marden also allegedly "verbally offered Mr. DaSuta a base salary of $110,000, a $20,000 guaranteed annual bonus and an opportunity to own equity in Imagemark." (Compl. ¶ 23)

Plaintiffs allege that on an unspecified date, and at an unspecified location, while discussing the terms of Imagemark's employment offer letter, Frank Bisconti informed Oh and DaSuta that Imagemark was worth $17 million. (Compl. ¶ 31) Oh and DaSuta asked Marden, Ross, Dean, and Bisconti about the discrepancy between that statement and Bernard Marden's initial representation that Imagemark was worth $25 million, was highly profitable and would reach a projected $50 million in annual sales by 2007 with the leadership of Oh and DaSuta. (Compl. ¶ 32) Plaintiffs allege that "Bernard Marden, Bruce Ross, Thom Dean and Frank Bisconti assured Mr. Oh and Mr. DaSuta that Imagemark was currently worth $25 million, was highly profitable and would reach a projected $50 million in annual sales by the end of 2007." (Compl. ¶ 33). Oh and DaSuta began work for Imagemark on August 8, 2005. (Compl. ¶ 35).

Oh and DaSuta claim that during their first month with Imagemark they learned that the company never had a profitable year and was financially stressed. (Compl. ¶ 41). To rebuild Imagemark, Oh and DaSuta proposed a business strategy called the "Profit Plan." (Compl. 44) Plaintiffs allege that during discussions about future financing to stabilize Imagemark, Bernard Marden promised equity in Imagemark to Mr. Oh and Mr. DaSuta, (Compl. ¶ 46), and then, after some negotiations over the amount of equity they would be given ensued, he terminated their employment with Imagemark on December 4, 2005. (Compl. ¶ 56).

## ARGUMENT

### I. THE THREE CLAIMS PREMISED ON ALLEGATIONS OF FRAUDULENT MISREPRESENTATION SHOULD BE DISMISSED.

Plaintiffs assert three claims premised on averments of fraud. The first two counts are identical and are based on allegations that Bernard Marden, both personally and on behalf of Imagemark, fraudulently misrepresented facts that wrongfully induced plaintiffs to enter into employment with Imagemark. The third count alleges that Frank Bisconti fraudulently misrepresented facts that wrongfully induced plaintiffs to continue their employment with Imagemark. These claims are not pleaded with the particularity required under Fed R. Civ. P. 9(b), and should be dismissed. In the alternative, Plaintiffs should be required to make a more definite statement, and re-plead with particularity under Fed. R. Civ. P. 12(e).

### A. Plaintiffs Have Not Alleged Fraud with the Required Particularity.

Rule 9(b) of the Federal Rules of Civil Procedure requires that a plaintiff plead allegations of fraud with particularity:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

> Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b). Rule 9(b) serves three main purposes: (1) to provide a defendant with fair notice of a plaintiff's claim, (2) to safeguard a defendants' reputation from "improvident charges of wrongdoing," and (3) to protect a defendant against the institution of a strike suit. *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991).

The Second Circuit has identified what level of detail satisfies the Rule 9(b) requirements. To plead fraud with particularity, a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citing *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)). Plaintiffs' complaint clearly does not satisfy the special requirements for pleading fraud with particularity. Their general allegations amount to nothing more than an attempt to create a claim for damages based upon the termination of their at-will employment.

The first and second counts of the Complaint are based upon representations allegedly made by Bernard Marden prior to the plaintiffs' acceptance of employment with Imagemark. The heart of these allegations are that:

> 60. Bernard Marden initially told Mr. Oh and Mr. DaSuta that Imagemark, was worth at least $25 million, when it was actually worth $10 million, and also offered equity in Imagemark.
>
> 61. Upon information and belief, Bernard Marden knew, from the 2004 Turn-Around Plan, that Imagemark was not worth $25 million, was financially unstable, and had not been profitable.
>
> 62. Upon information and belief, Bernard Marden relayed false information about Imagemark's net worth and

> performance to Mr. Oh and Mr. DaSuta to fraudulently induce them to join and continue to work for Imagemark.
>
> 63. Mr. Oh and Mr. DaSuta resigned from their positions with Liquidation.com and Aramark, respectively, in reasonable reliance on Bernard Marden's representation of existing facts about Imagemark's value, profitability, and financial stability.

(Compl. ¶¶ 60-63 and 67-70). Nothing in these paragraphs identifies where or when Bernard Marden's allegedly false statements were made. Without identifying that information, the Complaint cannot satisfy Rule 9(b)'s particularity requirements. *See Mills*, 12 F.3d at 1175.

Nor is that information found elsewhere in the Complaint. Paragraphs 15 and 16 state that Bernard Marden told Mr. Oh that Imagemark was worth $25 million, was projected to reach $50 million in annual sales by the end of 2007 with Mr. Oh's help and had been extremely profitable, during dinner at the 21 Club on July 19, 2005, but there is no allegation that Dean DaSuta was present at that dinner or that any misrepresentations were made to Mr. DaSuta at that time.

The only other allegations of representations made by Bernard Marden prior to plaintiffs' signing employment offer letters are contained in ¶¶ 32 and 33. There, plaintiffs allege that on an undisclosed date and at an undisclosed location, "Bernard Marden, Bruce Ross, Thom Dean and Frank Bisconti assured Mr. Oh and Mr. DaSuta that Imagemark was currently worth $25 million, was highly profitable and would reach a projected $50 million in annual sales by the end of 2007." (Compl. ¶ 33). This allegation is also insufficient to plead fraud with particularity. First, there is no indication as to where or when the allegedly fraudulent statements were made, a fundamental requirement of Rule 9(b). Second, the specificity requirement of Rule 9(b) is not satisfied where a complaint vaguely attributes alleged fraudulent statements to "defendants" because there is no way of knowing which defendant said what. *See DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242,

1249 (2d Cir. 1987). As paragraph 33 is written, there is no way of determining which of the four individuals mentioned made the statements. The effect is no different than had paragraph 33 simply referenced the "defendants."

Plaintiffs' third count for misrepresentation alleges that Frank Bisconti fraudulently misrepresented facts that wrongfully induced plaintiffs to continue their employment with Imagemark. Specifically, the Complaint alleges that plaintiffs relied upon the following representation in not seeking other employment opportunities:

> Frank Bisconti told Mr. Oh and Mr. DaSuta that Imagemark
> was a highly profitable business projected to make $50 million
> in annual sales with Mr. Oh and Mr. DaSuta.

(Compl. ¶ 75). As with the other fraud allegations, this statement does not provide the requisite level of particularity to state a claim under Rule 9(b). This allegation contains no information as to where or when Mr. Bisconti made this alleged representation.

B. **All Fraud Claims Should Be Dismissed For Failure To State A Claim Because Plaintiffs' Have Not Alleged The Requisite Intent Or Reasonable Reliance.**

In addition to failing to plead fraud with particularity, plaintiffs have also failed to state a claim for fraudulent misrepresentation. The elements of fraudulent misrepresentation in New York are: 1) the defendant made a material false representation; 2) the defendant intended to defraud the plaintiff thereby; 3) the plaintiff reasonably relied upon the representation; and 4) plaintiff suffered damage as a result of his or her reliance. *Swersky v. Dreyer and Traub*, 219 A.D.2d 321, 643 N.Y.S.2d 33 (N.Y. App. Div. 1st Dept. 1996).

No allegation of this complaint asserts that Bernard Marden or Frank Bisconti intended to defraud the plaintiffs. While Fed R. Civ. P. 9(b) permits intent to be stated generally, the Second Circuit has recognized that "we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims

of fraud on speculation and conclusory allegations.'" *Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). Plaintiffs still have the burden of alleging facts that give rise to a strong inference of fraudulent intent. *Id.* This inference may be alleged either by alleging facts to show that the defendants had motive and opportunity to commit fraud or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Id.*

Plaintiffs do not sufficiently allege motive and opportunity. With respect to Frank Bisconti, the complaint alleges no motive for his alleged statements. (*See* Compl. ¶¶ 75-78). With respect to Bernard Marden, the complaint alleges "upon information and belief" that he relayed false information to fraudulently induce Oh and DaSuta to join and continue to work for Imagemark. (Compl. ¶¶ 62, 69). However, to demonstrate motive, a plaintiff must allege a motive that entails concrete benefits. *Chill*, 101 F.3d at 268. Plaintiffs' conclusory allegation, based not upon facts, but upon information and belief, is insufficient to establish a concrete benefit accruing to Bernard Marden or Imagemark.

Nor do plaintiffs sufficiently allege facts supporting conscious misbehavior or recklessness. Reckless conduct is conduct that is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it. *Id.* at 269. While the complaint alleges that Bernard Marden knew that Oh and DaSuta were leaving other jobs to work for Imagemark, it also alleges that he was offering them positions that paid substantially more money than the positions that they were giving up. There is no indication from the allegations of the complaint that representations about Imagemark's financial position posed any "danger" to Oh and DaSuta, or that Bernard Marden and Frank

Bisconti knew or should have known of the danger.

Finally, a plaintiff making a claim for fraudulent misrepresentation must allege reasonable reliance upon the representation. *See Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 401 (2d Cir. 2001) ("[F]atal to the fraud claim is plaintiff's failure to allege reasonable reliance on such misrepresentations . . . [n]owhere in plaintiff's complaint does he allege that he reasonably and detrimentally relied on this 'accounting excuse' employed by the defendants"). Nowhere in their 23 page complaint do Oh or DaSuta assert that their reliance upon any of the alleged representations made by any defendant was reasonable. This failure is fatal to all fraud claims contained in the complaint, and they should be dismissed.

C. **To The Extent That Plaintiffs' Claims Are Predicated Upon Statements Of Opinion Or Predictions Of Future Events, They Have Not Stated An Actionable Claim For Fraud.**

Finally, to the extent that the plaintiffs base their allegations of fraud upon defendants' projections of Imagemark's profitability, they are not actionable. For example, the Complaint alleges that Frank Bisconti told Oh and DaSuta that Imagemark was "projected to make $50 million in annual sales with Mr. Oh and Mr. DaSuta." (Compl. ¶ 75). Paragraphs 16 and 33 allege that Bernard Marden and other defendants assured the plaintiffs that Imagemark would reach a projected $50 million in annual sales by the end of 2007.[3]

Representations of opinion or predictions of something which is hoped or expected will occur in the future will not sustain an action for fraud, unless the statement was made with the knowledge or intention that the act would not occur. *Chase Manhattan Bank,*

---

[3] Plaintiffs do not explain how they can know that the allegation as to Imagemark's sales for 2007 is false, since 2007 had not even begun when they filed this action.

*N .A. v. Perla*, 65 A.D.2d 207, 210, 411 N.Y.S.2d 66 (N. Y. App. Div. 4th Dept. 1978). Plainly, defendants' predictions for Imagemark's future profitability were merely expressions of hope and expectation, and the Complaint makes no allegation that the defendants' knew or intended that it would not meet the promised profits. Any claim predicated upon these representations should be dismissed.

## II.   PLAINTIFFS' PROMISSORY ESTOPPEL CLAIMS MUST BE DISMISSED AS A MATTER OF LAW FOR FAILURE TO STATE A CLAIM.

Plaintiffs allege five counts of promissory estoppel, each worded slightly differently, against Imagemark, Bernard Marden, James Marden, Bruce Ross, and Thom Dean. The facts alleged in the Complaint do not support a claim for promissory estoppel against any of these defendants, and all five counts should be dismissed.

As an initial matter, the complaint contains no allegation that plaintiffs' employment was other than "at-will." Absent an agreement fixing the duration of employment, there is a "presumption that employment for an indefinite or unspecified term is at will and may be freely terminated by either party at any time without cause or notice." *Horn v. New York Times*, 790 N.E.2d 753, 100 N.Y.2d 85, 90-91, 760 N.Y.S.2d 378 (2003). Plaintiffs make no allegation that they were promised employment for a fixed duration or that their employment with Imagemark was other than "at-will." *See, e.g., Hutchinson v. Zurich Scudder Investments, Inc.*, 290 A.D.2d 341 737 N.Y.S.2d 25 (N. Y. App. Div. 1st Dept. 2002).

To establish a viable cause of action for promissory estoppel, a plaintiff must allege: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained in reliance on the promise. *Rogers v. Town of Islip*, 230 A.D.2d 727, 646 N.Y.S.2d 158 (N. Y. App. Div. 2d Dept.

1996). It is well-established that an at-will employee cannot state a claim for promissory estoppel based upon a promise of a certain salary or benefits. *See Dalton v. Union Bank of Switzerland*, 134 A.D.2d 174, 176, 520 N.Y.S.2d 764 (N. Y. App. Div. 1st Dept. 1987) (citing *Cunnison v. Richardson*, 107 A.D.2d 50, 53, 485 N.Y.S.2d 272; *Ginsberg v. Fairfield-Noble Corp.*, 81 A.D.2d 318, 320-21, 440 N.Y.S.2d 222; *Swerdloff v. Mobil Oil Corp.*, 74 A.D.2d 258, 263, 427 N.Y.S.2d 266 *lv. denied*, 50 N.Y.2d 913, 431 N.Y.S.2d 523, 409 N.E.2d 995).

In *Dalton*, a strikingly similar case, the plaintiff alleged that during his job interview, Union Bank had represented to him that it was interested in strengthening its bullion trading desk at its New York office, and that it expected plaintiff's experience to result in enhanced business for the bank in the future. Union Bank hired Dalton at an annual salary of $145,000, plus other fringe benefits, including a bonus, insurance and pension benefits. Dalton alleged that based upon these promises, he left his former employment.

Dalton was terminated six months after he was hired. Dalton then sued Union Bank for, among other things, fraud and promissory estoppel. Denying his promissory estoppel claim, the court held:

> The fact that defendant promised plaintiff employment at a certain salary with certain other benefits, which induced him to leave his former job and forego the possibility of other employment in order to remain with defendant, does not create a cause of action for promissory estoppel. As we observed in *Ginsberg*, "a change of job, even with increased emoluments and advanced status 'is not sufficient to call promissory estoppel into play.'"

*Id.* at 176-77 (internal citations omitted). With those principals in mind, we must then turn to the sufficiency of the plaintiffs' complaint.

First, with respect to each of the claims for promissory estoppel, the

Complaint fails to allege that the reliance that Oh and DaSuta had upon the alleged promises was either reasonable or foreseeable, a key element of a promissory estoppel claim. The complaint merely alleges that in reliance upon the promise they "did not seek" other employment opportunities. That allegation is insufficient to establish that such reliance was reasonable or was foreseeable to Imagemark, Bernard Marden, Bruce Ross, James Marden, or Thom Dean.

Counts IV and V, and VI of the Complaint are rooted in essentially the same alleged promises:

> 83. Once Mr. Oh and Mr. DaSuta learned that Imagemark was not financially stable and was worth $10 million instead of $25 million, Defendant Bernard Marden made a clear and unambiguous promise to give each of them substantial equity in Imagemark
>
> . . .
>
> 91. Once Mr. Oh and Mr. DaSuta learned that Imagemark was not financially stable and was worth $10 million instead of $25 million, Defendant Bernard Marden offered to give each of them substantial equity in Imagemark.
>
> . . .
>
> 107. Once Mr. Oh and Mr. DaSuta learned that Imagemark was not financially stable and was worth $10 million instead of $25 million, Defendant Bruce Ross promised to give each of them equity in Imagemark.

(Compl. ¶¶ 83, 91, 107) The Complaint alleges that in reliance on these various promises of equity in Imagemark, "Mr. Oh and Mr. DaSuta did not seek other employment opportunities, and continued to work for Imagemark despite learning that the company was worth $15 million less than they were originally told." (Compl. ¶¶ 84, 92, and 109). Oh and DaSuta allege that Imagemark, Bernard Marden, and Bruce Ross breached their promises to give

them equity when they terminated their employment with Imagemark on December 4, 2005. (Compl. ¶¶ 86, 94 and ¶ 110).

These allegations are inadequate to state a claim for promissory estoppel under New York law. By the very allegations of their own complaint, any promised equity was simply a form of compensation for their employment with Imagemark and any attempt to assert it as a claim for promissory estoppel is simply an end-run around the employment-at-will doctrine. Because they could be terminated at any time and for any reason, plaintiffs could not reasonably rely upon the promise of equity as part of their compensation.

Plaintiffs' true intentions are most evident in the allegations of promissory estoppel made against James Marden. There, plaintiffs' acknowledge that they relied upon a promise of long-term employment: "[i]n reliance on James Marden's promises of equity, ownership, and a *long-term career* managing Imagemark, Mr. Oh and Mr. DaSuta did not seek other employment opportunities, and continued to work for Imagemark despite learning that the company was worth $15 million less than they were originally told." (Compl. ¶ 100) (emphasis added). This type of promise is not actionable in the employment context, where plaintiffs have not alleged that they were anything other than at-will employees. *See Skillgames, LLC v. Brody*, 1 A.D.3d 247 767 N.Y.S.2d 418 (N. Y. App. Div. 1st Dept. 2003) (holding that court properly dismissed fraudulent inducement and promissory estoppel claims to the extent they were premised on representation that at-will employee was "committed to continued employment").

Count Eight is severely flawed as well. In that claim, plaintiffs allege that defendant Thom Dean "told Mr. Oh and Mr. DaSuta that Imagemark was a highly profitable business projected to make $50 million in annual sales with Mr. Oh and Mr. DaSuta on

board"[4] and that in reliance on this promise, they "did not seek other employment opportunities." The bare fact that they did not seek other employment opportunities is insufficient to show detrimental reliance sufficient to support their claim. There is no indication that Mr. Oh or Mr. DaSuta were offered other opportunities or gave up other opportunities in light of what Thom Dean told them. In fact, they didn't even look.

## CONCLUSION

For the foregoing reasons, defendants' respectfully request that their motion to dismiss be granted, and Counts I through VIII of plaintiffs' complaint be dismissed. In the alternative, defendants request that plaintiffs be required to make a more definite statement and re-plead with particularity pursuant to Fed. R. Civ. P. 12(e).

---

[4] It is questionable whether the statement that the plaintiffs claim to be a "promise" is a promise at all. Section 2 of the Restatement (Second) of Contracts defines a promise as "[a] manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment had been made." The statement alleged to have been made by Mr. Dean is not a promise. It manifests no intention to act or to refrain from acting. It merely states a fact. It therefore cannot serve as the basis of a claim for promissory estoppel.

NIXON PEABODY LLP


By:_____/s/_____
         James W. Weller

50 Jericho Quadrangle, Suite 300
Jericho, New York 11753-2728

Of Counsel
Stephen E. Kravit
Sarah J. Friday
Kravit, Hovel, Krawczyk & Leverson s.c.
825 N. Jefferson Street
Milwaukee, Wisconsin 53202

Dated: January 16, 2007.

ATTORNEYS FOR DEFENDANTS