UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY OH and
DEAN DaSUTA,

Plaintiffs,

v.                                                           Case No.        06-CV-10187

IMAGEMARK, INC.,
BERNARD MARDEN,
JAMES MARDEN, BRUCE ROSS,
FRANK BISCONTI, and THOM DEAN,

Defendants.

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### I.     The Plaintiffs' Complaint Fails To Plead Fraud Claims With Particularity.

Despite their best efforts to argue that their Complaint satisfies the particularity requirements of Rule 9(b), the plaintiffs' argument falls short of the mark. Relying upon *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993), plaintiffs set forth the test for pleading fraud with particularity as follows: a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. However, plaintiffs' application of these factors to their Complaint essentially seeks to nearly negate the specificity requirements.

Citing only case law from the Third Circuit, *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984) and *Sunrise Fin. Res., Inc. v. Redevelopment Group V, LLC*, 417 F. Supp. 2d 632 (D.N.J. 2006), plaintiffs argue that they are not required to plead the "where or when" of the allegedly fraudulent statements. However,

Second Circuit case law is much more emphatic about what is needed to plead fraud with particularity: "To pass muster under rule 9(b), the complaint *must* allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation." *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990) (emphasis added) (citing *DiVittorio*, 822 F.2d at 1247; *Luce*, 802 F.2d at 54; *Denny v. Barber*, 576 F.2d 465, 469 (2d Cir. 1978); *see also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (stating that in order to comply with the requirements of Rule 9(b), an allegation of fraud must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statement (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.").

The Complaint alleges fraud claims against Imagemark, Bernard Marden and Frank Bisconti. Those statements include the assertion that Imagemark was "worth at least $25 million," was "highly profitable" and that the plaintiffs would be given equity in Imagemark. As further explained in the defendants' opening brief on this motion, the Complaint fails to plead with the particularity required. Paragraph 20 of the Complaint alleges that Bruce Ross and Thom Dean "reiterated that Imagemark was a $25 dollar million company," but it does not contain any specific allegations as to when these representations were allegedly made. Paragraphs 32-33 contain other allegations as to allegedly fraudulent statements made by Bernard Marden and Frank Bisconti (in fact, these are the only allegations as to statements made by Frank Bisconti). Plaintiffs allege that "Bernard Marden, Bruce Ross, Thom Dean and Frank Bisconti assured Mr. Oh and Mr. DaSuta that Imagemark was currently worth $25 million, was highly profitable and would reach a projected $50 million in annual sales by the end of 2007." (Compl. ¶ 33). This allegation also fails to identify where or when this alleged misrepresentation was made and fails

to satisfy Rule 9(b)'s particularity requirements, as set forth by the Second Circuit.

## II.    The Complaint Fails To Allege The Requisite Intent To Properly Plead Fraudulent Misrepresentation.

The Complaint also fails to properly allege the requisite intent on the part of any of the defendants which is necessary to state a claim for fraudulent misrepresentation. Intent can be alleged either by showing that the defendants had both motive and opportunity to commit fraud or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994). In meeting that standard, plaintiffs' Complaint misses the mark.

To show motive, a plaintiff must plead facts that would entail "concrete benefits" that could be realized by one or more of the false statements and wrongful nondisclosures alleged. *Id.* at 1130. Plaintiffs argue that motive may be inferred because the Complaint establishes that the defendants stood to gain by Oh's and DaSuta's agreement to join Imagemark and to take responsibility for its financial outlook. Principal to plaintiffs' argument in this regard is the allegation that once they were employed by Imagemark, Oh and DaSuta designed a business strategy called the "Profit Plan." However, as the court held in *Doehla v. Wathne Limited, Inc.*, Case No. 98-CV-6087, 1999 WL 566311 at *18 (Aug. 3, 1999), a case heavily relied upon by the plaintiffs, actions taken after the hiring is irrelevant to the determination of whether a complaint adequately pleads motive. The allegations of the Complaint which deal with the pre-hiring time period are limited to general allegations about Oh's and DaSuta's experience in sales. There is no allegation that aside from sales experience, either Oh or DaSuta had any experience in running a company, turning a company around, or making a company profitable. As such, the Complaint is inadequate to establish a concrete benefit accruing to Imagemark as a result of any of the defendants' alleged misrepresentations.

3

Plaintiffs also fail to plead strong circumstantial evidence of conscious misbehavior or recklessness. Reckless conduct is highly unreasonable conduct that represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996). As set forth in defendants' initial brief on this motion, the Complaint fails to establish reckless conduct because it does not allege that Imagemark's financial condition posed any danger to either Oh or DaSuta, and in fact, Oh and DaSuta were to benefit economically from going to work with Imagemark. Plaintiffs counter that the danger was that they were told that the company was highly profitable and that they would share in the profits through equity.[1] Yet, the Complaint contains no allegation that Imagemark's actual financial condition was the underlying cause of the plaintiffs' damages. Thus, the plaintiffs have not alleged that they were in any actual danger, let alone that the defendants knew or should have known of such danger.

### III. The Alleged Promises Of Equity Cannot Form The Basis Of Plaintiffs' Fraud Claims Because The Complaint Does Not Allege A Present Intent Not To Perform.

To the extent that the plaintiffs premise any of their fraud claims upon the promise of equity in Imagemark, those claims fail as a matter of law because any promise to provide plaintiffs with equity in Imagemark in the future is a promise of future performance that is not actionable as fraud under New York law. For such a promise to be actionable, there must also be an allegation that the party making the promise had no intention to perform at the time the promise was made. *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994); *Luce v. Edelstein*, 802 F.2d 49, 56, (2d Cir. 1986).

---

[1] As Section III demonstrates, a promise of equity, without an allegation of a present intent not to perform, cannot form the basis of a fraud action.

Here, Oh and DaSuta allege that various defendants promised them that they would give them equity in Imagemark. The promise to provide plaintiffs with equity at some point in the future is not a representation as to an existing fact. There is no allegation in the Complaint that at the time they made this promise, any of the defendants intended not to give the plaintiffs equity, nor is such a conclusion fairly inferred from the allegations of the Complaint. The alleged promise of equity is not actionable as fraud.

## IV.    Plaintiffs' Claims For Promissory Estoppel Are Veiled Wrongful Termination Claims That Are Not Actionable.

In arguing that their claims for promissory estoppel are actionable, plaintiffs rely heavily upon *Guggenheimer v. Bernstein Litowitz Berger & Grossman LLP*, 810 N.Y.S.2d 880 (2006), for the proposition that an at-will employee can maintain an action for promissory estoppel. *Guggenheimer* is distinguishable and provides no guidance here. *Guggenheimer* concerned a lawsuit filed by a law firm associate who had been promised "incentive compensation" if she were to bring cases to the law firm that proved to be successful. Several cases that she brought into the firm ultimately settled, the firm earned fees, and her right to a bonus accrued. It was after that point that the law firm refused to pay the bonus. The court, recognizing the policy against the forfeiture of earned wages, held that New York law permits employees to enforce an agreement to pay an annual bonus made at the onset of the employment relationship, where the bonus constitutes an integral part of the compensation package.

Here, there is no allegation that a promise of equity amounted to an "integral part" of the plaintiffs' compensation package from the onset of their employment relationship, nor may one be fairly inferred from the allegations of the Complaint. In fact, the Complaint alleges that during his initial meeting with Mr. Oh, Mr. Bernard Marden "discussed opportunities for Mr. Oh to own equity in Imagemark." (Compl. ¶ 16) The allegations as to the compensation

packages offered Oh and DaSuta at the time they were offered their jobs in August 2005 only alleges that part of the package was the "opportunity" to own equity in Imagemark, not that there was a firm offer of such equity as a part of the compensation package. (Compl. ¶¶ 27-28) In plaintiffs' own words, any promise of equity was not guaranteed and the fact that it was described as an "opportunity" leads to the inference that it was a possibility, not a certainty. Further undercutting Oh's and DaSuta's claims that this equity was part of their compensation package from the onset of the relationship (the requirement of *Guggenheimer*), Paragraph 46 of the Complaint then alleges that in September 2005 (after they started employment with Imagemark) "Bernard Marden promised equity in Imagemark to Mr. Oh and Mr. DaSuta." (Comp. ¶ 46)  One may fairly infer that such a promise would not have been necessary had equity been part of the plaintiffs' compensation package from the outset.

The case is much more akin to *Dalton v. Union Bank of Switzerland*, 134 A.D.2d 174 (1st Dept. 1987).  There, the plaintiff alleged that in reliance on representations, including that he "was hired 'for the longer term'[2] at an annual salary of $145,000, plus other fringe benefits-bonus, mortgage assistance, medical and accident insurance and pension benefits," he "was induced to leave his former employment" and join defendant.  *Id.* at 175.  The court's holding with respect to Dalton's promissory estoppel claims does not even reference "long term" employment as the reasoning underlying its decision.  Instead, it held:

> The fact that defendant promised plaintiff employment at a certain
> salary with certain other benefits, which induced him to leave his
> former job and forego the possibility of other employment in order

---

[2] Despite the plaintiffs' assertion that they do not allege that they were promised "continued or long-term" employment, the fact of the matter is that they do.  Paragraph 100 states that they did not seek other employment opportunities and continued to work for Imagemark "[i]n reliance on James Marden's promises of equity, ownership, and *a long-term career managing Imagemark*." (Compl. ¶ 100).

> to remain with defendant, does not create a cause of action for
> promissory estoppel.[3]
>
> . . . .
>
> As we observed in *Ginsberg*, (citing *Swerdloff, supra,* 74 A.D.2d
> at 263) "a change of job, even with increased emoluments and
> advanced status, 'is not sufficient to call promissory estoppel into
> play.'"

*Id.* at 176-177 (citations omitted).   At heart, Oh's and DaSuta's claims here are nearly identical to the claim that Dalton made:  that they were promised employment with a certain salary and certain other benefits and that "by terminating" their employment, Imagemark breached these promises.  (*See* Compl. ¶¶ 86, 94, 102, 110)   Oh and DaSuta cannot maintain promissory estoppel claims based on these allegations and Counts 4 through 7 of the Complaint should be dismissed.

## V.    The Complaint Does Not State A Claim For Promissory Estoppel Because It Fails To Allege Detrimental Reliance Based Upon Any Of the Promises.

Even if plaintiffs could maintain an action for promissory estoppel under these circumstances, the Complaint fails to state a claim for promissory estoppel because it fails to allege detrimental reliance based upon any of the promises.  Specifically, plaintiffs allege that they "did not seek other employment opportunities" in reliance on the alleged promises.  (Compl. ¶¶ 84, 92, 100, 109).   There is no allegation that the plaintiffs would have obtained other opportunities had they sought them, when they might have done so, or how much those opportunities might have paid.   Courts have repeatedly found that a plaintiff does not show detrimental reliance merely by showing that he or she did not seek other employment.  *See Panzino v. Scott Paper Co.*, 685 F. Supp. 458, 462 (D.N.J. 1988); *Jayne v. Archdiocese of*

---

[3] Anyone who has read plaintiffs' complaint will find this allegation familiar.  (*See* Compl. ¶¶ 84, 85) ("In reliance on Defendant Bernard Marden's clear promise of equity in Imagemark, Mr. Oh and Mr. DaSuta did not seek other employment opportunities . . . Mr. Oh and Mr. DaSuta gave up other employment opportunities to continue working with Imagemark because of Bernard Marden's promise" (*See also* Compl. ¶¶ 92, 93, 100, 109, 110, 115).

*Philadelphia*, Case. No. 93-4039, 1994 WL 112212 at \*4 (E.D. Pa. Mar. 25, 1994) ("failure to seek other employment is not forbearance of a definite and substantial character as a matter of law because there is not sufficient evidence from which a reasonable person could find that [plaintiff] failed to look for other work in detrimental reliance on the alleged promises."). The connection between any alleged promise of equity and work that plaintiffs might have obtained had they actually sought other employment is too tenuous to think that the plaintiffs could prevail at trial. Their promissory estoppel claims should be dismissed.

## CONCLUSION

For these reasons, and for the reasons set forth in Defendants' previously-filed Brief in Support of Defendants' Motion to Dismiss, the defendants respectfully request that their motion be granted and Counts I through VIII[4] be dismissed. In the alternative, defendants request that plaintiffs be required to make a more definite statement and replead with particularity, as required by Fed. R. Civ. P. 9(b).

---

[4] Plaintiffs have agreed that Count VIII, which alleged promissory estoppel against defendant Thom Dean, should be dismissed. (Plaintiffs' Br. at p. 20).

Dated: February 12, 2007
      Jericho, New York


**NIXON PEABODY LLP**


By:_____/s/_____
          James W. Weller (JW0545)

50 Jericho Quadrangle, Suite 300
Jericho, New York  11753-2728


<u>Of Counsel</u>
Stephen E. Kravit
Sarah J. Friday
Kravit, Hovel & Krawczyk s.c.
825 N. Jefferson Street
Milwaukee, Wisconsin  53202


ATTORNEYS FOR DEFENDANTS