```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
JEFFREY OH and DEAN DaSUTA,             :
                    Plaintiffs,         :
                                        :      06 Civ. 10187(DLC)
         -v-                            :
                                        :      OPINION AND ORDER
IMAGEMARK, INC., BERNARD MARDEN, JAMES  :
MARDEN, BRUCE ROSS, FRANK BISCONTI and  :
THOM DEAN,                              :
                    Defendants.         :
                                        :
----------------------------------------X
```

Appearances:

For plaintiffs:
Gary Phelan
Outten & Golden LLP
4 Landmark Square
Suite 201
Stamford, Connecticut 06901

For defendants:
James W. Weller
Nixon Peabody LLP
50 Jericho Quadrangle
Suite 300
Jericho, New York 11753-2728

DENISE COTE, District Judge:

Two former employees of Imagemark, Inc. ("Imagemark"), plaintiffs Jeffrey Oh ("Oh") and Dean DaSuta ("DaSuta"), bring claims for fraudulent misrepresentation and promissory estoppel against Imagemark and individuals identified as the company's owner, Bernard Marden; an officer, James Marden; its Chief Financial Officer, Frank Bisconti ("Bisconti"); and Bruce Ross

("Ross") and Thom Dean ("Dean"), both of whom are described as "President" of Imagemark (collectively, the "individual defendants").  Oh also alleges violations of the New York Executive Law, and the Administrative Code and Charter of the City of New York.

On May 15, the defendants filed a motion to dismiss some of the claims in the Amended Complaint[1] pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.  The motion is granted in part.

BACKGROUND

The following facts are taken from the Amended Complaint ("Complaint"), unless otherwise noted.  In July 2005, Oh earned an annual salary of $120,000 plus a bonus and equity, and was considering offers of employment with starting annual salaries of the same amount.  On July 19, Bernard Marden interviewed Oh for the position of Senior Vice President of Imagemark.  During the interview, Bernard Marden told Oh that Imagemark was worth $25 million, had been extremely profitable, and was projected to reach $50 million in annual sales by the end of 2007.

DaSuta, who was earning $110,000 per year, applied for the position of Vice President of Sales with Imagemark.  In late

---

[1] The original complaint had failed to plead the basis for diversity jurisdiction and was dismissed on April 10, 2007.

July 2005, Oh and DaSuta met with Ross and Dean in Imagemark's New York office.  Ross and Dean told Oh and DaSuta that Imagemark was a highly profitable, $25 million dollar company that could become a $50 million company with their help.

Sometime thereafter, Bernard Marden offered Oh the position of Senior Vice President, with a base salary of $135,000 and a $30,000 guaranteed annual bonus.  He offered DaSuta a base salary of $110,000 and a $20,000 guaranteed annual bonus. Bernard Marden knew that Oh and DaSuta would be leaving highly paid positions and declining other employment opportunities if they accepted Imagemark's offers.

In August 2005, Imagemark presented Oh and DaSuta with employment offer letters.  While discussing the terms of these letters, Bisconti told Oh and DaSuta that Imagemark was worth only $17 million.  Oh and DaSuta asked Bernard Marden, Ross, Dean, and Bisconti about the discrepancy between this figure and Bernard Marden's representations.  Bernard Marden, Ross, Dean, and Bisconti assured Oh and DaSuta that Imagemark was currently worth $25 million, was highly profitable and would reach a projected $50 million in annual sales by the end of 2007.

In August 2005, Oh and DaSuta signed offer letters with the terms that Bernard Marden had verbally conveyed, including an opportunity to own equity.  After accepting Imagemark's offers, Oh and DaSuta resigned from their previous jobs and

3

declined other employment opportunities.  They began working for Imagemark on August 8.

During their first week of work, they learned that Imagemark was financially vulnerable.  Within their first month of employment, they learned that Imagemark had lost some vendors and had strained relationships with other vendors.  They also learned that Imagemark was severely underfinanced.

On August 28, 2005, Oh and DaSuta met with Bernard Marden and James Marden.  At this meeting, the Mardens gave Oh and DaSuta a document entitled the Business Reorganization and Financial Turn-Around Plan ("Turn-Around Plan"), which analyzed Imagemark's finances from 1998 to July 2004.  The Turn-Around Plan revealed that Imagemark had never had a profitable year, had lost $9 million over the preceding three years, and was financially stressed.  The document confirmed that the defendants had known that Imagemark was worth less than $17 million at the time they extended employment offers to Oh and DaSuta.

Oh and DaSuta proposed a business strategy, called the "Profit Plan," which was designed to improve Imagemark's business within one year.  The individual defendants agreed with this strategy and implemented it in September 2005.  Beginning in September 2005, Bernard Marden repeatedly promised equity in Imagemark to Oh and DaSuta.  From September to November 2005,

4

the plaintiffs and Bernard Marden negotiated the terms of the equity that the plaintiffs were to receive.  On December 2, 2005, Bernard Marden told the plaintiffs that the equity agreement was finalized and would take effect on January 1, 2006.  Two days later, Imagemark terminated Oh's and DaSuta's employment without explanation.  Oh and DaSuta did not receive equity in Imagemark.

DISCUSSION

As a preliminary matter, although the defendants style their motion as one to dismiss the entire Complaint, their memorandum of law makes no argument for dismissing Counts IX through XII.  The motion is therefore denied as to those counts.

Under the pleading standard set forth in Rule 8(a) of the Federal Rules of Civil Procedure, complaints must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[A] plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests."  Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir. 2006).  Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is "not meant to impose a great burden upon a plaintiff."  Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005).  When considering a motion to dismiss

5

under Rule 12(b)(6), a trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).  A court must apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (citing Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S.Ct. 1955, 1968-69 (2007)).

Under Rule 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The Rule requires that a complaint based on misstatements "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007) (citation omitted).  Under Rule 9(b) "[m]alice,

6

intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Nonetheless, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted). The inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. at 290-91 (citation omitted).

I. Fraudulent Misrepresentation

The first three counts plead claims of fraudulent misrepresentation based on pre-employment representations made to both plaintiffs. Each claim is brought by both plaintiffs against Imagemark, Bernard Marden, and Bisconti, respectively. The defendants first contend that these claims fail to meet the requirements of Rule 9(b).

Counts I and II of the Complaint are based upon the allegation that Bernard Marden "initially" told Oh and DaSuta that Imagemark was worth at least $25 million. As the defendants effectively concede, the allegations in the Complaint are sufficiently particular to meet the Rule 9(b) standard with respect to Oh.

7

DaSuta's claims in Counts I and II require more discussion. These claims refer to Marden's representations to DaSuta, but the body of the Complaint does not describe any such pre-employment representations.  The Complaint describes representations made by Ross and Dean to DaSuta.  DaSuta is given leave to amend this employee's first two claims.

Count III alleges a fraudulent misrepresentation by Bisconti that Imagemark was highly profitable.  This misrepresentation is alleged to have been made at a meeting before the plaintiffs signed their employment offer letters. The plaintiffs are given leave to amend to plead the location and date of this meeting.

The defendants next contend that the plaintiffs have not alleged facts that give rise to a strong inference of fraudulent intent on the part of Bernard Marden or Imagemark generally. This argument fails.  The Complaint alleges that all of the defendants possessed and had access to the Turn-Around Plan and knew that Imagemark was worth less than $17 million at the time that job offers were extended to Oh and DaSuta.  The Complaint also alleges that in late July 2005, Bernard Marden told Oh, and that Ross and Dean told DaSuta, that Imagemark was worth $25 million, and that the defendants did not reveal Imagemark's actual financial condition until after the plaintiffs had begun working at Imagemark.  These facts, taken together, constitute

8

strong circumstantial evidence that Bernard Marden, Ross, and Dean intentionally deceived the plaintiffs in order to persuade them to accept the offers of employment.

The defendants next argue that the plaintiffs have not alleged that their reliance on any of the defendants' misrepresentations was reasonable.  Under New York law, a claim for fraudulent misrepresentation requires reasonable or justifiable reliance by the plaintiffs on the defendants' misrepresentations.  Lerner, 459 F.3d at 291.  The factual allegations of the Complaint support an inference that the plaintiffs' decisions to accept employment with Imagemark and forego other employment opportunities were made in reliance on the defendants' representations about Imagemark's financial value and that that reliance was reasonable.  Bernard Marden, Ross, and Dean held positions of authority at Imagemark.  It would have been reasonable, under the circumstances described in the Complaint, for the plaintiffs to believe these defendants' statements about Imagemark and to make employment decisions on the basis of these statements.

Finally, the defendants argue that some of the alleged misrepresentations are not actionable because they are opinions or predictions.  None of the claims rest solely on claimed misrepresentations as to future events.  It is therefore unnecessary to address this prong of the motion.

9

   II.  Promissory Estoppel

Counts IV through VII plead claims of promissory estoppel. The plaintiffs agree to the dismissal of their claim in Count VIII, which is brought against Dean.  The promissory estoppel claims in Counts IV through VII rest upon allegations that Bernard Marden (Counts IV & V), James Marden, and Ross each promised to give each of the plaintiffs equity in Imagemark. These promises were made after Oh and DaSuta had begun working at Imagemark and had learned the company's true financial condition.  The plaintiffs allege that they continued working at Imagemark, rather than seeking other employment, in reliance on these promises.

Counts IV through VII fail to state a claim for promissory estoppel.  Under New York law, the failure to switch employers does not create a promissory estoppel claim unless the plaintiff can show that unconscionable injury would result absent enforcement of the defendant's promise. Baguer v. Spanish Broadcasting Sys., No. 04 Civ. 8393 (KMK), 2007 WL 2780390, at *6 (collecting cases).

The plaintiffs rely on Guggenheimer v. Bernstein Litowitz Berger & Grossman, 810 N.Y.S.2d 880 (N.Y. Sup. 2006), which refused to dismiss a claim for promissory estoppel where the defendant had made a clear and unambiguous oral promise that the

10

plaintiff-employee would receive a bonus if she brought in business that resulted in earnings for the firm.  Id. at 934.  The plaintiff in Guggenheimer did not assert that she had remained with her employer in reliance on the promise, and therefore, the court had no occasion to confront the rule described in Baguer.  For these reasons, Guggenheimer does not appear to signal a change in New York's rule against entertaining promissory estoppel claims premised on employees' decisions to forego other employment opportunities.  The motion to dismiss is therefore granted with respect to Claims IV through VII.

CONCLUSION

The defendants' May 15 motion to dismiss is granted in part.  The motion is granted with respect to Counts III through VII and the claims asserted by DaSuta in Counts I and II.  DaSuta is granted leave to replead his claims in Counts I and II, and both plaintiffs are granted leave to replead Count III.

SO ORDERED:

Dated:   New York, New York
         October 10, 2007

                                    _____
                                            DENISE COTE
                                    United States District Judge

11